RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0278p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ROGER DEAN GILLISPIE,

                *Petitioner-Appellee*,

     *v.*

WARDEN, LONDON CORRECTIONAL INSTITUTION,

                *Respondent-Appellant*.

No. 13-3088

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 3:09-cv-00471—Michael R. Merz, Magistrate Judge.

Argued: June 24, 2014

Decided and Filed: November 13, 2014

Before: ROGERS and KETHLEDGE, Circuit Judges; MALONEY, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Stephanie L. Watson, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Mark Godsey, OHIO INNOCENCE PROJECT, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Stephanie L. Watson, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Mark Godsey, OHIO INNOCENCE PROJECT, Cincinnati, Ohio, Pierre H. Bergeron, SQUIRE SANDERS LLP, Cincinnati, Ohio, for Appellee.

_____

[*]The Honorable Paul L. Maloney, Chief United States District Judge for the Western District of Michigan, sitting by designation.

---

**OPINION**

---

KETHLEDGE, Circuit Judge.  This case is before us a second time.  In its first iteration, the State appealed a December 2011 order granting Roger Gillispie a conditional writ of habeas corpus.  That appeal became moot, however, when in parallel proceedings the Ohio courts expressly vacated the criminal judgment that the State sought to preserve by means of its appeal.  In connection with our dismissal of that appeal, the State failed to request that we vacate the conditional-writ order, though it likely could have obtained that relief if it had made the request.  Instead, on remand, the State filed a motion to vacate the conditional-writ order pursuant to Rule 60(b).  The district court denied the motion, and the State now appeals the denial.  We affirm, though not for the reasons stated by the district court.

I.

In August 1988, a man abducted a woman at gunpoint from a parking lot near Dayton, Ohio, took her to a remote area, and forced her to perform oral sex on him.  Fifteen days later the same thing happened again, except on that occasion the man abducted two women.  A grand jury indicted Gillispie for these crimes in October 1990.  The following year, a jury convicted him of nine counts of rape and three counts of kidnapping, among other counts.  The trial court sentenced Gillispie to 22 to 56 years in prison.  The Ohio Court of Appeals affirmed Gillispie's convictions and sentence.  The Ohio Supreme Court denied leave to appeal.

Over the next 15 years, Gillispie brought a variety of petitions and motions in state court.  None secured his release.  Then, in 2008, Gillispie moved for a new trial on three grounds, only two of which are relevant here.  The first—premised on the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963)—was that the prosecution had failed to produce some initial police reports that allegedly eliminated Gillispie as a suspect.  The state trial court rejected that claim, and the state court of appeals affirmed.  The second ground for Gillispie's motion was that new evidence showed that another man had committed the rapes.  The state trial court rejected

that claim as well, but the court of appeals remanded for an evidentiary hearing to evaluate Gillispie's new evidence.

At that point, as in a similar case, "proceedings in federal court began to interweave with those in state court." *Eddleman v. McKee*, 586 F.3d 409, 411 (6th Cir. 2009). In December 2009—before the state trial court commenced its evidentiary hearing—Gillispie filed a habeas petition in federal district court, asserting only his *Brady* claim. (That tactic was unusual because normally a prisoner exhausts all of his claims in state court before coming to federal.) Meanwhile, in 2010, the state trial court held its evidentiary hearing and rejected Gillispie's new-evidence claim. Gillispie appealed.

Then, in 2011, the federal district court held an evidentiary hearing on Gillispie's *Brady* claim. On December 15, 2011, the district court granted a so-called conditional writ of habeas corpus, which ordered Gillispie released "unless he is again convicted at a trial commencing not later than July 1, 2012." The State filed a notice of appeal the following day. Six days later, the district court stayed its conditional-writ order but ordered Gillispie released during the pendency of the State's appeal to our court. The State released Gillispie that same day.

Gillispie's success continued in April 2012, when the state court of appeals reversed the trial court's denial of relief on his new-evidence claim, and remanded his case for a new trial. The court's opinion stated that "Gillispie's conviction and sentences are Vacated"; but the court stayed its decision pending the State's attempt to appeal to the Ohio Supreme Court. That court denied leave to appeal on November 7, 2012, at which point the court of appeals lifted its stay and Gillispie's criminal judgment was formally vacated.

The vacatur of Gillispie's criminal judgment removed the predicate for federal habeas jurisdiction. *See Eddleman*, 586 F.3d at 413. The district court seemed to recognize as much: in a *sua sponte* order dated November 9, 2012, the court observed that the Ohio courts had "vacated the judgment which was the subject of this case." Relatedly, the vacatur of Gillispie's criminal judgment, combined with his by-then unconditional release, meant that all the purposes of the conditional writ had been met; so in the same order the district court ordered the State to "show cause not later than November 19, 2012, why this Court should not dissolve its stay pending appeal and notify the Sixth Circuit Court of Appeals that the appeal is moot." In response—and,

by all appearances, with the support of both Gillispie and the district court—the State filed a motion in our court to dismiss its appeal voluntarily. We granted the motion.

What the State neglected to seek in its motion to dismiss its appeal, however, was the vacatur of the district court's December 15, 2011 order granting the conditional writ. That relief was likely there for the taking, since the State's appeal (of that order) had become moot through no fault of the State. *See, e.g., U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*, 513 U.S. 18, 23 (1994). Instead, the State chose a harder path, asking the district court to vacate its conditional-writ order pursuant to Fed. R. Civ. P. 60(b). The district court denied the State's motion; and that denial is the subject of this appeal.

II.

We review the district court's denial of the State's Rule 60(b) motion for an abuse of discretion. *Workman v. Bell*, 484 F.3d 837, 839-40 (6th Cir. 2007). (We also note that the State's notice of appeal did not encompass orders entered after the district court's December 20, 2012 order denying the State's Rule 60(b) motion; so only the December 20 order is before us here.)

Rule 60(b) provides that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for reasons the Rule then spells out in six subsections. The State argues that three subsections apply here, the first being Rule 60(b)(4). That subsection allows—indeed perhaps requires, *see Philos Techs. v. Philos & D., Inc.*, 645 F.3d 851, 855 (7th Cir. 2011)—the district court to vacate a "judgment [that] is void[.]" Fed. R. Civ. P. 60(b)(4). The State contends that the conditional-writ order is void because the vacatur of Gillispie's convictions divested the district court of jurisdiction over his case. But the State is focused upon the wrong point in time. "A void judgment is one which, *from its inception*, was a complete nullity and without legal effect." *Lubben v. Selective Service System Local Bd. No. 27*, 453 F.2d 645, 649 (1st Cir. 1972) (emphasis added); *see also, e.g., Northridge Church v. Charter Tp. of Plymouth*, 647 F.3d 606, 611-12 (6th Cir. 2011). And at the time of its inception the conditional-writ order undisputedly was not void.

The State next argues that it was entitled to vacatur under Rule 60(b)(5), which provides in relevant part that the district court may vacate a judgment that "is based on an earlier judgment that has been reversed or vacated." In the State's view, the conditional-writ order was "based on" Gillispie's criminal judgment, which has since been vacated. But that is not the sort of reliance contemplated by the Rule. Typically, the "based on" language from Rule 60(b)(5) applies when "the present judgment is based on the prior judgment in the sense of res judicata or collateral estoppel." *Klein v. United States*, 880 F.2d 250, 258 n. 10 (10th Cir. 1989). In such cases, the later judgment is based on an assumption about the validity of the earlier one; and if that assumption proves incorrect, Rule 60(b)(5) might, depending on the circumstances, provide a means of vacating the later judgment. *See, e.g., Manzanares v. City of Albuquerque*, 628 F.3d 1237, 1240-41 (10th Cir. 2010). But here the opposite is true: the district court's conditional-writ order—like every such order—was based on a conclusion about the criminal judgment's *invalidity*. Indeed the very purpose of a conditional writ is to compel the state to vacate a judgment entered in violation of the federal Constitution. *See Gall v. Scroggy*, 603 F.3d 346, 353 (6th Cir. 2010). That the order achieves its purpose is no reason to take it off the books.

That leaves Rule 60(b)(6), which allows a district court to vacate a judgment for "any other reason that justifies relief." The scope of this provision is narrower than it sounds: Rule 60(b)(6) permits relief only in "unusual and extreme situations where principles of equity *mandate* relief." *Stokes v. Williams*, 475 F.3d 732, 735 (6th Cir. 2007) (emphasis in original; interior quotations marks omitted).

Here, the district court thought that vacatur of its conditional-writ order was inappropriate for two principal reasons. The first began with a reversal of sorts: the court rejected its earlier, *sua sponte* conclusion that the vacatur of Gillispie's criminal judgment had rendered its conditional writ moot—a conclusion, one might add, that led the State to seek dismissal of its appeal—and now declared that it retained a putative, continuing interest in "enforcing the conditional writ[.]" Order Denying Motion to Vacate ("Order") at 5. Specifically, the court noted the State's intention to proceed anew with its prosecution of Gillispie; and the court asserted that its conditional-writ "order was that, unless Gillispie was retried and *convicted* before July 1, 2012, the writ would become absolute." *Id.* (emphasis added).

As an initial matter, the latter assertion amounted to an impermissible change to the court's conditional-writ order, which required the State "to release Petitioner from custody unless he is again convicted at a trial *commencing* not later than July 1, 2012." (Emphasis added.) Thus, the conditional-writ order required only that Gillispie's new trial commence by July 1, 2012; whereas the court's Rule 60(b) order required that Gillispie be convicted by that date. (The Rule 60(b) order added that "[t]he conditional writ order will not be satisfied until and unless that new jury convicts Gillispie again." Order at 5.) "Commence" and "convict" are two different things, the former occurring at the trial's outset, the latter, if at all, at the trial's end; and thus the State is right to complain that the district court purported to increase the burdens imposed by its conditional-writ order, in applying a Rule that authorized only "relief" from it. Fed. Rule Civ. P. 60(b); *see also Girts v. Yanai*, 600 F.3d 576, 582 (6th Cir. 2010) ("We do not hold that a district court can materially amend its judgment after the state has released a petitioner").

But more to the point, the district court's assertion of a prospective interest in the conditional writ's enforcement is flatly inconsistent with our decision in *Eddleman*. To return to first principles: Gillispie filed his habeas petition under 28 U.S.C. § 2254, which grants jurisdiction to federal courts to "entertain an application for a writ of habeas corpus in behalf of a person in custody *pursuant to the judgment of a State court* only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). "For federal habeas jurisdiction to exist under § 2254, therefore, a state prisoner must be held pursuant to a *judgment*—rather than, say, an indictment or criminal information." *Eddleman*, 586 F.3d at 413. Thus, "once the unconstitutional judgment is gone, so too is federal jurisdiction under § 2254." *Id.* Here, Gillispie's criminal judgment was gone by November 7, 2012—when the Ohio Supreme Court denied review of the courts of appeals' decision that expressly vacated that judgment—which means that, per the plain terms of *Eddleman*, the district court's jurisdiction over Gillispie's case was gone by then too.

*Eddleman*'s unequivocal holding, standing alone, is enough to establish that the district court was without further jurisdiction in Gillispie's case once his criminal judgment was vacated; but it bears mention that even the facts of *Eddleman* are materially identical to those here.

There, as here, the district court granted a conditional writ that ordered the petitioner released unless he was retried within a certain time. *Id*. at 411. There, as here, the state later vacated the petitioner's criminal judgment. *Id*. There, the district court later concluded that the State had missed the retrial deadline set in its conditional-writ order; and thus the court entered another order that purported to enforce the conditional writ. *Id*. at 412. That is the precisely the same enforcement power that the district court purported to reserve to itself here. In *Eddleman* we reversed, holding that, once the state vacated the unconstitutional judgment, "per the plain terms of § 2254, the district court's jurisdiction over Eddleman's case came to an end." *Id*. at 413. The same is true in Gillispie's case. In *Eddleman*, we added that, once the petitioner's criminal judgment was vacated, "[t]he responsibility of ensuring that he received not only a fair trial, but a timely one, then passed to the [state trial court] in the first instance." *Id*. The same is true here.

What the district courts in both of these cases overlooked is that § 2254, and not a district court's own conditional-writ orders, defines the limits of the court's habeas jurisdiction. By its terms, § 2254 empowers the district court to achieve a single end: to terminate the petitioner's unconstitutional custody. A district court can achieve that end by granting an absolute writ, which itself vacates the unconstitutional judgment and orders the petitioner immediately released. *Satterlee v. Wolfenbarger*, 453 F.3d 362, 370 (6th Cir. 2006). Or, as an "accommodation[]" to the state, the court can grant a conditional writ, which requires the state either to vacate the unconstitutional judgment or to replace it with a constitutional one (by retrying him) within a certain period of time. *Id.* at 369. But what the court cannot do is continue to enforce the terms of a conditional writ after the petitioner is no longer in custody pursuant to an unconstitutional judgment. *See, e.g., Eddleman*, 586 F.3d at 413; *Gall*, 603 F.3d at 353 ("The federal court retains jurisdiction to afford . . . relief until the unconstitutional judgment is gone"); *Fisher v. Rose*, 757 F.2d 789, 791 (6th Cir. 1985) ("Since Fisher was no longer being held pursuant to the constitutionally defective conviction . . . the district court erred in ordering Fisher's release and barring retrial").

Neither of the cases cited by the district court support a different conclusion. In *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006), we held that "the district court retained jurisdiction to enforce its conditional writ" precisely because "Gentry's status as a convicted felon apparently

remained in force, as the Commonwealth did not nullify her conviction." And in *Girts*, we carefully explained that the district court's verbal order "granting Petitioner's release was issued while he was still in custody on the improperly obtained conviction." 600 F.3d at 580. Nor does *D'Ambrosio v. Bagley*, 656 F.3d 379 (6th Cir. 2011)—the principal case that Gillispie cites to us on appeal—authorize the district court to continue enforcement of its conditional writ. There, in support of our conclusion that "the district court retained jurisdiction to monitor the state's compliance with the conditional writ[,]" we explained at great length that "D'Ambrosio's convictions were never 'vacated' as Eddleman's convictions were." *Id*. at 386, 388; *see also id*. at 387 ("*Eddleman* is different from this case because D'Ambrosio's conviction was not 'vacated' as the habeas petitioner's in *Eddleman* was"). We added that, in the absence of the parties' agreement that a petitioner's conviction has been vacated, "[w]hat vacates a conviction is an entry in the court docket, which—depending on the state's procedures—is likely made through a court order, or clear actions by the court signifying a vacatur." *Id*. at 388. We indisputably have such "clear actions" here: the Ohio Court of Appeals' April 2012 opinion (which became final on November 7, 2012) expressly stated that "Gillispie's conviction and sentences are Vacated[.]"

Nor, contrary to Gillispie's assertions on appeal, do the putative "collateral consequences" of his convictions empower the district court to continue to exercise jurisdiction over his case. As an initial matter, all of the documents that Gillispie cites as proof of those consequences are more than 18 months old; and during oral argument before our court, Gillispie's counsel notably omitted to rebut the contention of the State's counsel that none of those collateral consequences continue to exist now. But again, more to the point, the district court was divested of jurisdiction over Gillispie's case once the Ohio Court of Appeals vacated his criminal judgment. *Compare Gentry*, 456 F.3d at 692 ("the Commonwealth did not nullify her conviction"). If, in fact, Gillispie continues to suffer adverse consequences from his vacated convictions, his remedy lies in state court—in the form of a motion to enforce the plain terms of the Ohio Court of Appeals' decision—not in federal court.

None of this is to say, however, that the district court was without jurisdiction to adjudicate the State's Rule 60(b) motion. To the contrary, "Rule 60(b) has an unquestionably

valid role to play in habeas cases." *Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005). Indeed, the Supreme Court expressly contemplated a motion like the one here. *See id*. ("In some instances, we may note, it is the State, not the habeas petitioner, that seeks to use Rule 60(b), to reopen a habeas judgment *granting* the writ") (emphasis in original). But the Rule authorizes the court only to grant "[r]elief" from an order granting the writ, not to enforce the order after the unconstitutional judgment is gone.

In summary, the district court is without further jurisdiction in Gillispie's case. Thus, the purported "prospective effect" of the court's conditional-writ order was not a valid reason to deny the State's Rule 60(b) motion.

The district court also suggested that all of its conclusions in its order granting relief with respect to Gillispie's *Brady* claim would bind the parties in his retrial. Order at 11. The State appears to disagree, emphasizing that the order was not tested on appeal. We take no position on that issue, leaving it to the Ohio courts, in the first instance, to determine the preclusive effect of the district court's order. But we do hold that, to the extent the district court itself purported to decide the preclusive effect of its order for purposes of ongoing proceedings in the Ohio courts, it was again without jurisdiction to do so. For "[n]either Rule 60(b), 28 U.S.C. § 2254, nor the two read together, permit a federal habeas court to maintain a continuing supervision over a retrial conducted pursuant to a conditional writ granted by the habeas court." *Pitchess v. Davis*, 421 U.S. 482, 490 (1975).

That leaves the State's principal argument as to why the district court should have granted its Rule 60(b) motion. In *United States v. Munsingwear*, 340 U.S. 36, 40 (1950), the Court stated that "the duty of the appellate court" in an appeal that becomes moot "through happenstance" is to "vacate the judgment below and remand with a direction to dismiss." Likewise, in *U.S. Bancorp*, the Court stated that "vacatur must be granted where mootness results from the unilateral action of the party who prevailed in the lower court." 513 U.S. at 23. Here, the conditional-writ order's mootness was the result of Gillispie's actions, since he was the party that sought vacatur of his convictions in the Ohio courts; and thus the State contends the district court was obligated to vacate its order. But that conclusion does not follow. *Munsingwear* and *U.S. Bancorp* concern an appellate court's duty, under certain circumstances,

to vacate an order that has become moot on appeal. Those cases do not address whether the district court should vacate the same order in later proceedings on remand.

Moreover, so far as the equities are concerned, the State's position here is nearly identical to that of the United States in *Munsingwear*. There, the United States appealed an adverse order that became moot during the pendency of its appeal, but failed to seek vacatur of the order in connection with the dismissal of the appeal. Then, in a later appeal of an order entered on remand, the United States sought vacatur of the earlier order. The Supreme Court refused to vacate the earlier order, observing that the United States had "slept on its rights, [and] now asks us to do what by orderly procedure it could have done" in the first appeal. 340 U.S. at 41. All of those circumstances are present here. Plus there are some additional ones that weigh heavily against the State's request: namely, that Rule 60(b)(6) permits relief only in "unusual and extreme situations where principles of equity *mandate* relief[,]" *Stokes*, 475 F.3d at 735 (internal citation omitted); and that we review the district court's denial of the State's Rule 60(b) motion for an abuse of discretion. Finally, as the Supreme Court stated in *Bancorp*, we "must also take account of the public interest"; and that generally means that judicial precedents "should stand unless a court concludes that the public interest would be served by a vacatur." 513 U.S. at 26 (internal citation and quotation marks omitted). Without addressing the merits of the district court's conditional-writ order, we see no particular reason why a vacatur of that order would serve the public interest here.

\* \* \*

The district court's December 20, 2012 order denying the State's Rule 60(b) motion is affirmed.